IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DERRICK SMART, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF GLOUCESTER, | : | No. 20-12408 |
| EUGENE CALDWELL, II, | : | |
| WILLIAM GLAZE, BRAD | : | |
| SCHMIDHEISER, MICHAEL | : | |
| MCLAUGHLIN, LOCAL | : | |
| FRATERNAL ORDER OF | : | |
| POLICE NO. 97, NEW JERSEY | : | |
| STATE FRATERNAL ORDER OF | : | |
| POLICE, | : | |
| Defendants. | : | |

**MEMORANDUM**

**TIMOTHY R. RICE**                                                                          **December 30, 2021**
**U.S. MAGISTRATE JUDGE**

Plaintiff Derrick Smart has sued Defendants Gloucester County (the "County"), Eugene

Caldwell, II, William Glaze, Brad Schmidheiser, Michael McLaughlin, Local Fraternal Order of

Police No. 97 (the "Local Union"), and New Jersey State Fraternal Order of Police (the "State

Union") for retaliation, discrimination, conspiracy, malicious prosecution, and breach of contract

in violation of New Jersey state law and federal law.  See Notice of Removal (doc. 1), Ex. H,

Second Am. Compl. ("SAC").  Defendants move to dismiss almost all counts.  See County,

Caldwell, and Glaze's Partial Mot. to Dismiss (doc. 2) ("County Mot. to Dismiss");

Schmidheiser and McLaughlin's Mot. to Dismiss (doc. 16) ("Schmidheiser Mot. to Dismiss");

9/22/2020 Letter from State and Local Unions (doc. 11).  Defendants' motions are granted in

part and denied in part.

Count III, in which Smart claims the County, the Local Union, and the State Union violated the Conscientious Employee Protection Act, N.J. Stat. §§ 34:19-1 et seq. ("CEPA"), and Count VII, in which Smart claims Defendants conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985, are dismissed with prejudice because Smart failed to bring them within the applicable statutes of limitations. Count VI, in which Smart brings a common law claim of conspiracy, is dismissed with prejudice because it was previously dismissed by the New Jersey trial court.

Counts IV, V, and IX, in which Smart brings claims under 42 U.S.C. § 1983 for race discrimination and retaliation in violation of 42 U.S.C. § 1981, retaliation in violation of the First Amendment, and malicious prosecution in violation of the Fourth Amendment, are dismissed without prejudice because Smart fails to include sufficient facts to plausibly establish the elements required for these claims. Count VIII, in which Smart alleges malicious prosecution under common law, is dismissed without prejudice as to Defendant Glaze. Smart may amend his complaint within 30 days to plead additional facts to support these claims. See Guarneri v. Buckeye Pipe Line Servs. Co., No. 14-1131, 2014 WL 1783072, at *1 (D.N.J. May 5, 2014).

Defendants' motions to dismiss Counts I and II, in which Smart makes claims of discrimination and retaliation in violation of the New Jersey Law Against Discrimination, N.J. Stat. §§ 10:5-1 et seq. ("LAD"), are denied. Count X, in which Smart claims breach of contract against the State and Local Unions, also remains intact; the Unions did not move for dismissal of that count.

## I.      Legal Standard

I may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."  Id.  In addition to the complaint, I may consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).  Although I must construe the complaint in the light most favorable to the plaintiff, I shall dismiss any allegations that are contrary to documents on which they rely.  See id.  I also shall not accept any "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678-79.  Even if I find that a complaint should be dismissed for failure to state a claim for relief, the plaintiff may amend the complaint if it is possible for him to add facts to raise a plausible claim.  See Guarneri, 2014 WL 1783072, at *1.

## II.    Facts Alleged by Smart

The Gloucester County Sheriff's Office hired Smart, an African American, as a corrections officer in 2004.  SAC ¶ 1.  Smart was a member of the Local Union from 2004 to 2015, serving as treasurer between 2008 and 2012 and president in 2012.  Id. at ¶¶ 1-2.

In April 2008, Smart, along with then-Local Union president, Dominic Capanna,[1] who is White, complained that Correctional Director/Warden Balicki was having inappropriate relationships with female correctional officers.  Id. at ¶¶ 20, 46.  Approximately six months later, in October 2008, Smart and Capanna complained that A-shift correctional officers, supervised by

---

[1]     Smart refers to Capanna as both Capanna and Capano.  See SAC ¶¶ 20-21, 45-47.  I will refer to him as Capanna.

Sergeant (later Warden) Eugene Caldwell, were unjustifiably assaulting minority inmates on a daily basis, and that nepotism and favoritism were standard practices in the Sheriff's Office.  Id. at ¶ 21.  During a December 2008 Local Union meeting, Smart addressed concerns about A-shift officers attacking minority inmates.  Id. at ¶ 24.

Between April and July 2010, Smart advocated against the County's plan to close the women's prison and lay off correctional officers who worked there.  Id. ¶ 25.  Later that year, Smart helped Corrections Officer Lacey file a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") against the County and Sergeant Kralikowski. Id. at ¶ 26.

In June 2011, Smart informed Freeholder Larry Wallace that Sergeant Caldwell was having inappropriate relationships with female inmates and filed an internal affairs complaint. Id. at 27-28.  In November 2011, Smart contacted the prosecutor's office about Caldwell's conduct.  Id. at ¶ 29.

In January 2012, Smart was elected president of the Local Union but had to step down in February 2012 due to family medical needs.  Id. at ¶ 30.  Smart left his job as a corrections officer in February 2012 but returned in July 2013.  Id. at ¶ 31.  Corrections officer Michael McLaughlin sought to have Smart removed from the Local Union by spreading false rumors about him and Capanna.  Id. at ¶ 32.  These rumors led the Local Union to hire PP&D Accounting Services, Inc. to conduct an independent forensic accounting of the Local Union's financial records from January 2008 until December 31, 2011, when Smart had been treasurer. Id. at ¶ 33; Schmidheiser Mot. to Dismiss, Ex. 11, PP&D Accounting Report at 1.[2]

---

[2]      I may consider the PP&D Accounting Report because it forms the basis of Smart's claim. See Lum, 361 F.3d at 222 n.3.

Smart alleges that PP&D found no misappropriation or theft.  See SAC ¶¶ 34, 48, 60b.
PP&D, however, did not make any finding about misappropriation or theft, primarily because it
lacked complete information to make such a finding.  See PP&D Accounting Report at 3-10.
Further, PP&D concluded that Smart "did not perform his duties in accordance with the [Local
Union's Bylaws] within a reasonable degree of accountant certainty."  Id. at 10.  It explained:

a. "[T]he 2008, 2009, 2010, and 2011 returns were not accurately prepared and [] the
2009, 2010, and 2011 returns were never filed, as required in the by-laws and in
accordance with the internal revenue code and state of New Jersey Charitable
registration."[3]  Id. at 3-4.

b. "Smart as treasurer was required to maintain timely filing of all returns and ensure
that [the accountant] prepared the necessary tax filings and accounting."  Id. at 9.
These actions have put the Local Union at risk and subject to potential penalties and
fines.  Id. at [[add pincite]]  The Local Union also has incurred additional accounting
costs to reconcile, recreate and determine an accurate financial position of the Local
Union.  Id. at 10.

c. "[N]one of the checks for 2009, 2010 and 2011 were countersigned as required in the
by-laws."  Id. at 4.

d. It was unable to determine if debit card and ATM withdrawals "were approved by the
membership for the prompt payment of lawful obligations of the [Local Union]."  Id.
at 5.

---

[3]     PP&D stated that Ronald Ford, Jr. was hired to prepare the tax returns between 2009 and
2012 and was paid thousands of dollars by the Local Union during that time, but the returns were
never filed and Ford refused to respond to its requests for information.  PP&D Accounting
Report at 3-4.

e.  It was not provided with the proper accounting supports to substantiate checks made out to Cash and Petty Cash.  Id.

f.  "[M]any transactions were not reflected in the registers, there was lack of support for various entries and therefore we concluded that the register balances were incorrect." Id. at 6.

g.  The "account balances reported by Smart" during meetings "compared with the account balances reconciled by the bank statements has indicated that the financial condition was overstated in every month. . . .  It appears that the reported financial condition was based on the manual register balances that were not maintained accurately and therefore were incorrect."  Id. However, even the manual registers "did not always match the amounts recorded in the minutes of meetings."  Id.

Smart alleges that McLaughlin and fellow corrections officer Brad Schmidheiser are responsible for PP&D's finding that he did not properly handle the books because they maintained the records and receipt books and "never fully produced receipts to PP&D or the prosecutor's office."  SAC ¶ 60(c)-(g).

In April 2013, Internal Affairs Investigator William Glaze disclosed confidential information about Smart to Schmidheiser and McLaughlin allegedly in violation of the New Jersey Attorney General's policy.  Id. at ¶ 38.  In July 2013, Caldwell was promoted to Warden for the County's Department of Corrections.  Id. at ¶ 40.  In September 2013, Schmidheiser and McLaughlin, then President of the Local Union and Treasurer of the Local Union, respectively, maliciously and intentionally sought to have Smart prosecuted for misappropriation of funds.  Id. at ¶¶ 9, 11, 43.  Caldwell encouraged Schmidheiser and McLaughlin by initiating a meeting between them and the prosecutor's office.  Id. at ¶¶ 52-53.  Although Capanna, as the former

6

Local Union President and Treasurer, worked at all times with Smart with regard to Local Union funds, Schmidheiser and McLaughlin did not seek to prosecute Capanna.  Id. at ¶¶ 44-45.

On approximately August 22, 2014, Smart was arrested and charged with theft of Local Union funds.  Id. at ¶ 54; Schmidheiser Mot. to Dismiss, Ex. 12, Compl.  On approximately August 25, 2014, Smart was suspended from his job without pay pending resolution of the criminal theft charges.  Id. at ¶ 55.  Four years later, on October 3, 2018, Smart's case was dismissed.  Id. at ¶ 58.  The State and Local Unions have refused to pay Smart's legal fees.  Id. at ¶¶ 69-71.

## III.    Procedural History

On August 19, 2016, Smart filed a complaint in New Jersey state court against the County, Caldwell, Schmidheiser, McLaughlin, Glaze, the Local Union, the County Prosecutor's Office, and five John Does, alleging, under state law, harassment/hostile work environment based on his race, retaliation, conspiracy, breach of contract, and intentional infliction of emotional distress. See Schmidheiser Mot. to Dismiss, Ex. 1, 8/19/2016 Compl.  On December 16, 2016, the state court dismissed with prejudice all of Smart's claims except for his claim of retaliation.  See id., Ex. 3, 12/16/2016 Order.  The court later stayed the case pending disposition of the criminal charges against Smart and then entered a series of scheduling orders postponing the case deadlines.  See Reply (doc. 21), Ex. A, 6/18/2018 Order, Ex. B, 7/17/2019 Order; Schmidheiser Mot. to Dismiss, Ex. 4, 12/2/2019 Order.

On November 22, 2019, Smart filed an Amended Complaint, asserting state and federal claims of retaliation, discrimination, conspiracy, malicious prosecution, and breach of contract.[4]

---

[4]    Smart also added the State Union as a party and excluded the prosecutor's office and John Does 1-5 as defendants.

See Schmidheiser Motion to Dismiss, Ex. 5, First Am. Compl.  On December 19, 2019,

Defendants filed a notice of removal.  See Smart v. County of Gloucester, et al., No. 19-21622,

Notice of Removal (doc. 1).  On July 14, 2020, I remanded the case to the New Jersey state court

because Smart never obtained leave to amend his complaint.  See id., 7/14/2020 Order (doc. 40).

On August 11, 2020, the New Jersey state court granted Smart leave to file his Second

Amended Complaint, which Smart filed the next day.  See Schmidheiser Mot. to Dismiss, Ex. 9,

8/11/2020 Order; Smart's Resp. (doc. 17) at 2.  In September 2020, Defendants again removed

the case to this Court and moved to dismiss.  See Notice of Removal (doc. 1).

## IV.   Discussion

### A.  Count I – Retaliation in Violation of New Jersey Law

Smart alleges that Defendants retaliated against him in violation of the LAD "by

attempting to remove him from union leadership and causing him to be criminally prosecuted

and suspended for a supposed violation that Defendants knew was baseless."  SAC ¶ 75.

Schmidheiser and McLaughlin argue that the claim must be dismissed against them because: (1)

Smart fails to allege they were his employer or supervisor; and (2) they are immune from

liability based on the litigation privilege.  I disagree.

#### 1.   Employer Liability

Although the LAD limits discrimination claims to conduct by "employers," N.J.S. § 10:5-

12(a), or persons who "aid and abet" the unlawful discriminatory act, id. § 10:5-12(e), the statute

broadly prohibits retaliatory conduct by "any person," see id. § 10:5-12(d) (it is unlawful for

"any person to take reprisals against any person because that person has opposed any practices or

acts forbidden under this act).  Smart was not required to allege that Schmidheiser and

McLaughlin were his employers or supervisors when acting in the manner that forms the basis of

his retaliation claim.  See id. § 10:5-12(d); Tyson v. Cigna Corp., 918 F. Supp. 836, 839 (D.N.J. 1996) (It is clear from the various provisions of the NJLAD "that the New Jersey legislature knows how to impose individual liability in plain language when it is confident that it wants to do so[.]"), aff'd in part and rev'd in part on other grounds, Failla v. City of Passaic, 146 F.3d 149, 156-58 (3d Cir. 1998); Craig v. Suburban Cablevision, Inc., 644 A.2d 112, 115 (N.J. Super. Ct. App. Div. 1994) ("[T]he protection against retaliation embodied in the LAD is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying antidiscrimination policies of the Act by protecting against reprisals 'any person' who has sought to protect his or her own rights not to be discriminated against[.]").  It was sufficient for Smart to allege that Schmidheiser and McLaughlin caused him to be criminally prosecuted and suspended because of his alleged protected activity.  See SAC ¶¶ 75-76.

    2.   Litigation Privilege

Schmidheiser and McLaughlin argue that the retaliation claim is barred by the litigation privilege because Smart's allegations are based on their communications with the prosecutor's office "preliminary to a judicial proceeding in which [Smart] was ultimately charged with theft."[5]  Schmidheiser Mot. to Dismiss at 27, 33.  Contrary to Schmidheiser and McLaughlin's claims, the litigation privilege does not provide absolute immunity to statements made to state authorities regarding a potential criminal action.  Compare Schmidheiser Mot. to Dismiss at 30-43; with Geyer v. Faiella, 652 A.2d 1245, 1247-48 (N.J. Super. Ct. App. Div. 1995); Ciemniecki v. Parker McCay P.A., No. 09-6450, 2010 WL 2326209, at *7-8 (D.N.J. June 7, 2010) (citing Dijkstra v. Westerink, 401 A.2d 1118, 1121–22 (N.J. Super. Ct. App. Div. 1979)).  Instead, a

---

[5]    Schmidheiser and McLaughlin also argue that the litigation privilege requires dismissal of Counts II, IV, V, VI, and VII.  I disagree for the reasons discussed in this section.

defendant is entitled to qualified immunity for claims based on communications made in good faith to state authorities "for the prevention and detection of crime."  Wright-Phillips v. United Airlines, Inc., No. 20-14609, 2021 WL 1221111, at *19 (D.N.J. Apr. 1, 2021) (citing Dairy Stores, Inc. v. Sentinel Publ'g Co., 516 A.2d 220, 226 (N.J. 1986)); see also Loigman v. Twp. Comm. of the Twp. of Middletown, 889 A.2d 426, 436 (N.J. 2006) (litigation privilege applies to § 1983 and tort claims); Peterson v. Ballard, 679 A.2d 657, 661 (N.J. Super. Ct. App. Div. 1996) (litigation privilege could apply to LAD claims).  Communications are not made in good faith if: (1) the defendant knew the statement was false or acted in reckless disregard of its truth; (2) the statement was not made for the purposes of detecting a crime; or (3) the statement was excessively published.  Ciemniecki, 2010 WL 2326209, at *8.

Smart alleges that Schmidheiser and McLaughlin retaliated against him by maliciously and intentionally seeking to have him prosecuted for a crime they knew he did not commit.  SAC ¶¶ 43, 65, 66.  He further asserts that PP&D found that he mishandled the books because Schmidheiser and McLaughlin failed to fully provide the Local Union receipts.  Id. ¶ 60(c)-(g). These allegations are sufficient to support a finding that Schmidheiser and McLaughlin acted in reckless disregard of the truth, or with bad faith, when seeking to have Smart prosecuted for theft and, therefore, are not entitled to qualified immunity, pursuant to the litigation privilege.  See Ciemniecki, 2010 WL 2326209, at *8 (allegations that defendant made false statements to the police because of his animosity against her were sufficient to support a finding that qualified immunity did not apply).

Schmidheiser and McLaughlin's motion to dismiss the retaliation claim in Count I is denied.

**B.  Count II – Race Discrimination in Violation of New Jersey Law**

Smart asserts Defendants discriminated against him "by causing him to be criminally prosecuted and suspended because of his race in violation of the NJLAD."  SAC ¶ 83. Defendants argue that this claim must be dismissed because: (1) it was previously dismissed by the New Jersey trial court; (2) it is barred by the statute of limitations; (3) Smart fails to state a plausible claim of race discrimination; and (4) Smart fails to allege Schmidheiser and McLaughlin were his employer or supervisor.  I disagree.

1.  New Jersey Trial Court's Order

Defendants initially argue that the LAD discrimination claim must be dismissed because the New Jersey state court dismissed the same claim with prejudice in Smart's original complaint.  See Schmidheiser Mot. to Dismiss, Ex. 3, 12/16/2016 Order; 28 U.S.C. § 1738 (judicial proceedings of any state court shall have the same full faith and credit in every court within the United States as they have by law or usage in the originating state); Dowdell v. Univ. of Med. & Dentistry of New Jersey, 94 F. Supp. 2d 527, 533-34 (D.N.J. 2000) (state court's dismissal of LAD harassment and retaliation claims based on the statute of limitations precluded plaintiff from bringing federal lawsuit raising same claims).  In his original complaint, however, Smart raised a harassment/hostile work environment claim, not a discrimination claim based on his arrest and suspension.  See id., Ex. 1, 8/19/2016 Compl.  Because the two claims are separate, the state court's dismissal of the harassment/hostile work environment claim does not require dismissal of Smart's discrimination claim.  See Arku-Nyadia v. Legal Sea Foods, Inc., No. 18-1089, 2020 WL 6111001, at *4-5, *8 (D.N.J. Oct. 16, 2020) (discussing distinct elements of discrimination and hostile work environment claims).

11

2.   Statute of Limitations

Defendants also contend that this discrimination claim is barred by the two-year statute of limitations.  A LAD discrimination claim must be brought within two years of the alleged discriminatory act.  See Alexander v. Seton Hall Univ., 8 A.3d 198, 203 (N.J. 2010) ("[A]brupt, singular adverse employment actions that are attributable to invidious discrimination, prohibited by the LAD, generally are immediately known injuries, whose two-year statute of limitations period commences on the day they occur[.]").  Because Smart's discrimination claim is premised on his arrest and suspension, which culminated on or about August 25, 2014, he was required to file his claim on or about August 25, 2016.[6]  See SAC ¶¶ 54-55, 83; O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (because suspension is an easily identifiable discrete act, statute of limitations runs from the date of the discriminatory act, i.e., the suspension).  Smart did not raise his claim until almost four years later when filing his Second Amended Complaint on August 12, 2020.  See Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019) (the most recently filed amended complaint is the operative pleading).  Smart nevertheless argues that his claim is timely because it relates back to his original complaint, which was filed on August 19, 2016.  Smart's Resp. at 1, 11-14.  I agree.

Federal Rule of Civil Procedure 15(c) states that an amended pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose

---

[6]     Smart argues that the two-year statute of limitations period began when he was exonerated of the criminal charges in October 2018, because that is when his malicious prosecution claim accrued and the discrimination was a continuing violation.  Resp. (doc. 18) 14-15.  New Jersey law, however, is clear that a discrimination claim based on discrete adverse acts, such as suspensions, are not continuing violations and accrue on the date of the discrete act of discrimination.  See Alexander, 8 A.3d at 203; Sgro v. Bloomberg L.P., 331 F. App'x 932, 938 (3d Cir. 2009).

out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original

pleading."  Fed. R. Civ. P. 15(c)(1)(B).  This liberal rule, which allows a party to sidestep an

otherwise applicable statute of limitations, "embodie[s] a clear preference . . . for merits-based

decision making."  Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc., No. 20-2929, 2021 WL

3923389, at *3 (3d Cir. Sept. 2, 2021) (quoting T Mobile Ne. LLC v. City of Wilmington, 913

F.3d 311, 328 (3d Cir. 2019)); Glover v. FDIC, 698 F.3d 139, 145 (3d Cir. 2012).  "[T]he

touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a

party who has been notified of litigation concerning a particular occurrence has been given all

the notice that statutes of limitations were intended to provide.'"  Glover, 698 F.3d at 146 (3d

Cir. 2012) (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984)).  Thus,

"the underlying question for a Rule 15(c) analysis is whether the original complaint adequately

notified the defendants of the basis for liability the plaintiffs would later advance in the amended

complaint."  Id.

Smart included many of the same facts from his original complaint in his Second

Amended Complaint.  Compare 8/19/2016 Compl., with SAC.  Although he did not specifically

bring a race discrimination claim in his original complaint, he alleged that his race played a part

in his arrest and suspension.  See 8/19/2016 Compl. ¶ 39a.  Defendants therefore had sufficient

notice of his race discrimination claim and it relates back to the date the original complaint.  See

Costa v. J. Fletcher Creamer & Sons, Inc., No. 16-8492, 2018 WL 3756445, at *3 (D.N.J. Aug.

8, 2018) (because Fair Labor Act and LAD discrimination claims arose out of same conduct

alleged in initial complaint, the claims related back to that complaint); Saiyed v. Archon, Inc.,

No. 16-9539, 2017 WL 4881578, at *3 (D.N.J. Oct. 30, 2017) (because plaintiff's claims based

on New Jersey Wage and Hours laws "arose from the same conduct and factual occurrences,

which, fairly construed, implicated Defendants in the Plaintiff's first pleading," they related back to the original complaint); cf. Glover, 698 F.3d at 146-47 (claim did not relate back where plaintiff's original complaint did not make any allegations regarding the conduct that formed the basis of the new claims).

Schmidheiser and McLaughlin argue that even if the LAD discrimination claim relates back to Smart's original complaint filed on August 19, 2016, it is still untimely as to them because their alleged misconduct occurred more than two years before that date. However, based on Smart's allegations, it is possible that Schmidheiser and McLaughlin could have acted within two years of the original complaint. See SAC ¶¶ 43-44, 53-54 (Schmidheiser and McLaughlin sought to have Smart prosecuted and charges were filed against Smart on or about August 22, 2014). Because it is not "apparent on the face of the complaint" that Smart's LAD discrimination claim against Schmidheiser and McLaughlin is barred by the statute of limitations, it cannot be dismissed on this basis. Brown v. Camden City Sch. Dist., No. 19-114, 2020 WL 6055070, at *3 (D.N.J. Oct. 13, 2020) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

Defendants also argue that they "will be greatly prejudiced" if the claims are allowed to relate back because discovery will need to restart and the action has been pending for multiple years. Schmidheiser Mot. to Dismiss at 18; see also County Reply Br. at 3-4. I disagree. Although Defendants state that they have begun taking depositions, discovery remains open. A scheduling order has not even been entered. The delay also does not appear to have been caused by improper motives. The state court initially stayed the case pending disposition of the criminal charges against Smart and later postponed the case deadlines for good cause being shown and for

the efficient administration of the litigation.  See Reply (doc. 21), Ex. A, 6/18/2018 Order, Ex. B, 7/17/2019 Order; Schmidheiser Mot. to Dismiss, Ex. 4, 12/2/2019 Order.

3.   Failure to State a Plausible Claim

The County, Caldwell, Glaze, and the State and Local Unions argue that the discrimination claim must be dismissed because Smart "does not allege any facts or circumstances that could plausibly be construed as discrimination on the basis of race."  County Mot. to Dismiss. at 6; 9/22/2020 Letter by State and Local Unions.

To state a claim for race discrimination under the LAD, Smart must show:  (1) he was in a protected class; (2) he was performing his "job at a level that met the employer's legitimate expectations"; (3) he suffered an adverse employment action; and (4) "others not within the protected class did not suffer similar adverse employment actions."  Maclean v. Stuart Weitzman Shoes, 863 F. Supp. 2d 387, 391 (D.N.J. 2012) (citing Zive v. Stanley Roberts, Inc., 867 A.2d 1133 (N.J. 2005)).  For the fourth element, a plaintiff may "introduce evidence of comparators (i.e., similarly situated employees) who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances."  Rios v. City of Perth Amboy, No. 19-19336, 2020 WL 4382277, at *4 (D.N.J. July 31, 2020) (quoting Green v. V.I. Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014)).

Smart alleges that both he and Capanna, who was White, complained about improper conduct by Correctional Director Balicki and then-Sergeant Caldwell.  SAC ¶¶ 20-21.  He also alleges that Capanna, as president and previous treasurer of the Local Union, acted at all times with him with regard to the Local Union's finances.  Id. at ¶ 45; see also id. at ¶ 60(c) (Capanna turned over all receipt books to Schmidheiser).  Nevertheless, Defendants "chose to allege that Plaintiff had violated the law [by misappropriating Local Union funds] and should be prosecuted

but did not seek charges against [Capanna]."  Id. at ¶ 44; see also id. at ¶¶ 38, 52-53, 65-66.

Because Smart has alleged that Defendants treated a comparator White employee more favorably

than him under similar circumstances, he has sufficiently set forth a claim of LAD

discrimination.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 791 (3d Cir. 2016) (plaintiff's

allegations that defendant rehired six other men, including two with less seniority, were

sufficient to support gender discrimination claim).

      4.  Employer Liability

      Schmidheiser and McLaughlin argue that they cannot be liable for discrimination under

the LAD because Smart fails to allege that they were his employer or supervisor.  As previously

discussed, the LAD solely prohibits discrimination by employers or persons who aid and abet in

such discrimination.  See supra Section IV.A.1; Tarr v. Ciasulli, 853 A.2d 921, 928 (N.J. 2004).

To prove that a person aided and abetted, the plaintiff must show that:  (1) the employer engaged

in discriminatory conduct; and (2) the defendant knowingly and substantially assisted in the

discriminatory conduct.  Tarr, 853 A.2d at 929.  Although the New Jersey Superior Court has

held that this aiding and abetting analysis applies only to supervisory employees, the New Jersey

Supreme Court has extended its application to non-supervisory employees.  Compare Herman v.

Coastal Corp., 791 A.2d 238, 254 (N.J. Super. Ct. App. Div. 2002) (stating individual must be a

supervisor to be independently liable for acts of discrimination), with Cicchetti v. Morris Cnty

Sheriff's Office, 947 A.2d 626, 645 (N.J. 2008) (approving Superior Court's application of

aiding and abetting analysis to non-supervisory co-employees).  Smart therefore did not have to

allege that Schmidheiser and McLaughlin were his supervisors; rather, he had to allege facts

showing they knowingly and substantially aided and abetted in the County's discriminatory

16

conduct.  See Tarr, 853 A.2d at 929.  Smart has sufficiently alleged such facts.  See SAC ¶¶ 42-44, 52-53, 60(c)-(g).

Defendants' motion to dismiss Smart's LAD discrimination claim in Count II is denied.

### C.  Count III – Violation of Employee Rights Under New Jersey Law

Smart contends the County, Local Union, and State Union violated his rights under the CEPA by causing him to be criminally prosecuted and suspended from his job after he spoke out and assisted others with complaints about matters that he reasonably believed violated the law. SAC ¶¶ 89-92.  Defendants argue that this claim is barred by the CEPA statute of limitations.  I agree.

CEPA claims must be filed within one year of the adverse employment action.  See Ivan v. Cnty of Middlesex, 595 F. Supp. 2d 425, 465 (D.N.J. 2009) (citing N.J.S. § 34:19-5).  Smart's CEPA claim began accruing when he was arrested and suspended on or about August 25, 2014. SAC ¶¶ 54-55, 92; Farneski v. Cnty. of Hunterdon, 916 F. Supp. 2d 573, 588 (D.N.J. 2013) (CEPA claim accrues on the date of plaintiff's suspension).  Smart was required to raise his claim on or about August 25, 2015.  Smart, however, did not raise his claim until filing his Second Amended Complaint on August 12, 2020.  See supra Section III.  Although Smart argues that his CEPA claim relates back to his original complaint, his original complaint was filed in August 2016, almost one year after the CEPA statute of limitations expired.  Even if the claim related back, it would still be barred by the statute of limitations.

Because it is apparent from the face of Smart's complaint that his CEPA claim is barred by the one year statute of limitations, Count III is dismissed with prejudice.  See Brown, 2020 WL 6055070, at *3.

**D.  Count IV – § 1981 Race Discrimination and Retaliation Pursuant to § 1983**

Smart brings a claim under § 1983 against all Defendants, asserting they denied his right to benefit from a contractual relationship because of his race and his complaints of discrimination in violation of § 1981.  See SAC ¶¶ 95-103.  Defendants argue that this claim must be dismissed because Smart: (1) filed it after the statute of limitations; (2) fails to allege the County was acting pursuant to a specific policy, practice, or custom; (3) fails to allege plausible claims of race discrimination and retaliation against Caldwell and Glaze; and (4) fails to allege Schmidheiser and McLaughlin were acting under color of state law.  I agree that Smart fails to sufficiently allege a plausible claim against the County, Glaze, Schmidheiser, and McLaughlin.

1.  Statute of Limitations

Defendants argue that this claim is barred by the two-year statute of limitations applicable to § 1983 claims.  Smart counters that a four-year statute of limitations period applies to § 1981 claims based on § 1983.  Although I agree that a four-year statute of limitations applies to Smart's claim, Smart failed to file his claim within four years of the alleged wrongful conduct culminating in his suspension and termination in August 2014.  See supra Section IV.B.2.; Jones v. R.R. Donnelley & Sons, Inc., 541 U.S. 369, 382 (2004) (stating that 28 U.S.C. § 1658(a)'s four-year statute of limitations applies to § 1981 claims against a private actor based on discriminatory conduct that occurred after the formation of a contract because such claims arose under the Civil Rights Act of 1991); Williams v. Rowan Univ., No. 10-6542, 2012 WL 813161, at *6 (D.N.J. Mar. 9, 2012) (§ 1658(a)'s four-year limitations period applies to § 1981 claims brought against a state actor under § 1983 when the claim is based on conduct that occurred after the contract was formed).  Nevertheless, because Smart's § 1981 race discrimination and retaliation claims are based on the same facts as the LAD retaliation claim in his original

complaint, they relate back to that timely complaint and are not barred by the statute of

limitations.  See Costa, 2018 WL 3756445, at *3; supra Section IV.B.2.

       2.   Failure to State a Claim Against the County

To bring a § 1983 claim against the County, Smart must allege that it acted pursuant to a

specific policy or custom.  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("[A]

plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal

'policy' or 'custom' that caused the plaintiff's injury") (citing Monell v. Dep't of Soc. Servs.,

436 U.S. 658, 694 (1978)); see also McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009)

(plaintiff must specify the custom or policy in the complaint); Torres v. Monmouth Cnty. Corr.

Inst., No. 19-17704, 2021 WL 3773687, at *5-6 (D.N.J. Aug. 25, 2021) (plaintiff must present

facts to support claim that "a policy or custom existed or that there were any prior similar

incidents that would have put policymakers on notice that unlawful conduct was occurring").

Smart baldly alleges only that "Defendants took discriminatory and retaliatory actions

pursuant to an official policy, practice, and/or custom maintained at all relevant times herein."

SAC ¶ 102.  Because Smart fails to specifically identify the custom or policy that controlled the

County's actions, or facts to support his allegation, I dismiss his § 1983 race and retaliation claim

against the County without prejudice.

       3.   Failure to State a Claim Against Caldwell and Glaze

Caldwell and Glaze argue that Smart's § 1983 claims against them in their official

capacities must be dismissed because it is redundant of his claim against the County.  I agree.

See Cuvo v. De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of claims

against officers in their official capacities because they are redundant of the claim against the

County) (citing, inter alia, Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).

Caldwell and Glaze also argue that Smart's § 1983 claims against them in their personal capacities must be dismissed because Smart fails "to allege any facts or circumstances that could plausibly be construed as discrimination or retaliation on the basis of race." County Mot. to Dismiss at 11. Smart has stated plausible claims for § 1981 discrimination against Caldwell and Glaze for the same reasons I found that he stated a plausible claim for LAD discrimination. See supra Section IV.B.3; Wesley v. Palace Rehab. & Care Ctr., L.L.C., 3 F. Supp. 3d 221, 230 (D.N.J. 2014) ("Claims brought under § 1981 and the NJLAD are analyzed using the same evidentiary schemes.").

Smart also has set forth a plausible § 1981 retaliation claim against Caldwell by alleging that he complained that officers supervised by Caldwell were unjustifiably assaulting minority inmates and that Caldwell, after becoming Warden, encouraged Schmidheiser and McLaughlin to pursue criminal charges against him, resulting in his suspension.[7] See SAC ¶¶ 21, 40, 52-55; Est. of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (for § 1981 retaliation claim, plaintiff must show:  (1) she engaged in protected activity by opposing discrimination protected by § 1981; (2) the employer took an adverse action against her; and (3) a causal connection exists between the protected activity and adverse action).  Smart, however, has failed to allege any facts showing that Glaze retaliated against him for opposing discrimination in violation of § 1981.  See, e.g., SAC ¶¶ 37-38.

---

[7]    Although there was a substantial length of time between Smart's alleged protected activity and Caldwell's alleged adverse action, Smart's allegations of retaliation are plausible at this stage.  See, e.g., Conrad v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018) (causation is not limited to temporal proximity, particularly at the motion to dismiss stage).

Smart's § 1981 discrimination and retaliation claims against Caldwell and Glaze in their official capacities are dismissed with prejudice. Smart's § 1981 retaliation claim against Glaze in his personal capacity is dismissed without prejudice.

4.   Failure to State a Claim Against Schmidheiser, McLaughlin, and the Unions

Schmidheiser and McLaughlin argue that Smart's § 1983 claims against them must be dismissed because Smart fails to allege they were acting under color of state law. See Graham, 473 U.S. at 165 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").

Smart alleges Schmidheiser and McLaughlin discriminated and retaliated against him by spreading rumors that he had misappropriated funds, having him investigated by PP&D, failing to provide in full the appropriate information to PP&D, and pursuing criminal charges against him. SAC ¶¶ 32-33, 42-44, 60c-g, 65, 98, 100. Smart, however, fails to allege any facts to suggest that Schmidheiser and McLaughlin undertook those actions as corrections officers. See id.; West v. Atkins, 487 U.S. 42, 49-50 (1988) (defendants act under color of state law when they abuse the position given to them by the State). Instead, Smart alleges that they acted in their capacities as union officers. See, e.g., id. at ¶¶ 43 ("Defendant local union acted through its president Schmidheiser and its treasurer to maliciously and intentionally have Plaintiff prosecuted when it knew that Plaintiff had not committed a crime."), 44 ("Defendant local union through its president Schmidheiser chose to allege that Plaintiff had violated the law and should be prosecuted but did not seek charges against [Capanna]."). Moreover, Smart has failed to include any facts "suggesting that the state was responsible for the Union or that the Union acting under color of state law." Jackson v. Temple Univ. of Com. Sys. of Higher Educ., 721 F.2d 931, 933 (3d Cir. 1983).

21

Smart's § 1981 discrimination and retaliation claims against Schmidheiser, McLaughlin, the Local Union, and the State Union are dismissed without prejudice.

### E.  Count V – First Amendment Retaliation

Smart also brings a claim of First Amendment retaliation under § 1983 against Caldwell, Glaze, Schmidheiser, and McLaughlin.  SAC ¶¶ 106-10.  He alleges that he "engaged in conduct protected by the First Amendment, among other things, he assisted another individual draft an EEOC charge," id. at ¶ 106, and the individual defendants retaliated against him because of his "protected activity by causing [him] to be criminally prosecuted and suspended," id. at ¶ 108. Defendants argue that this claim must be dismissed because: (1) Smart failed to file it within the statute of limitations; and (2) Smart failed to sufficiently plead that they retaliated against him in violation of his First Amendment rights.  I agree that Smart has failed to plead sufficient facts to plausibly establish that Defendants retaliated against him in violation of his First Amendment rights.

### 1.  Statute of Limitations

The individual defendants initially argue that this claim is barred by the two-year statute of limitations.  See Myers v. Cnty. of Somerset, 515 F. Supp. 2d 492, 501 (D.N.J. 2007) (First Amendment retaliation claim must be brought within two years of the alleged retaliatory act). Although I agree that Smart failed to raise this claim within two years of the alleged retaliatory act, i.e., his August 2014 suspension, I nevertheless find that this claim relates back to his original complaint filed on August 19, 2016, because it arises out of the same events.  Compare 8/19/2016 Compl. ¶¶ 10g, 39b, d, with SAC ¶¶ 26, 108; see also Costa, 2018 WL 3756445, at *3; supra Section IV.B.2.  Smart's First Amendment claim is not barred by the statute of limitations.

2.   Failure to State a Claim

The individual defendants also argue that Smart has failed to sufficiently claim that they retaliated against him in violation of his First Amendment rights.  I agree.

First, although Smart alleges that he engaged in protected conduct by helping another corrections officer file an EEOC complaint against the County and Sergeant Kralikowki, he fails to plead sufficient facts to plausibly establish that his conduct caused Caldwell, Glaze, Schmidheiser, or McLaughlin to retaliate against him.  See Conrad v. Pa. State Police, 902 F.3d 178, 183 (3d Cir. 2018) (plaintiff must allege the protected conduct was a substantial and motivating factor for the retaliatory conduct).  Smart does not include any allegations to suggest that Caldwell, Glaze, Schmidheiser, or McLaughlin knew that he assisted with the EEOC complaint or that they had any reason to retaliate against him for assisting with the complaint, which concerned conduct by a different officer with no apparent connection to the individual defendants.  See Vaticano v. Twp. of Edison, 514 F. App'x 218, 225 (3d Cir. 2013) (plaintiff failed to establish causation when he could not show that the defendants were aware he engaged in the protected conduct).

Second, Smart fails to sufficiently allege how the individual defendants were acting in their official capacities pursuant to a specific policy, practice, or custom.  See supra Section IV.D.2; SAC ¶ 110; Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'") (quoting Graham, 473 U.S. at 166)).

Finally, Smart fails to allege how Schmidheiser and McLaughlin's alleged retaliatory conduct was taken under the color of state law, rather than in their personal capacities as union officials.  See supra Section IV.D.3.

Smart's First Amendment retaliation claim in Count V is dismissed without prejudice.

**F.  Count VI – Conspiracy Under New Jersey Law**

Smart asserts that Defendants "combined to unlawfully interfere with [his] prospective and existing contracts."  SAC ¶ 114.  Defendants argue that this claim must be dismissed because the New Jersey state court already dismissed it with prejudice.  I agree.[8]

In his original complaint, Smart brought a common law conspiracy claim against the individual defendants for their alleged conduct in relation to his arrest and suspension.  See 8/19/2016 Compl. ¶¶ 40-44.  On December 16, 2016, the state court dismissed that count with prejudice.  See 12/16/2016 Order.  Smart cannot now reassert the same common law conspiracy claim against the individual defendants.  See Dowdell, 94 F. Supp 2d at 533-34 (court cannot ignore the state judgment by considering plaintiff's restated LAD claim).  Because his conspiracy claim against the County, the State Union, and the Local Union is based on the individual defendants' conduct, his claim against those entities also is barred.  See Sunkett v. Misci, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) (an abstract entity can only engage in a conspiracy through the actions of its officers).

Smart's common law conspiracy claim is dismissed with prejudice.

---

[8]     Because I find that this claim must be dismissed based the New Jersey state court's earlier order, I shall not consider Defendants' other arguments.

### G.  Count VII – Conspiracy to Interfere with Civil Rights

Smart also argues that Defendants "combined to unlawfully interfere with [his] civil rights" in violation of § 1985.  SAC ¶ 119.  Defendants contend this claim is barred by the two-year statute of limitations.  I agree.

"The New Jersey two-year statute of limitations applies to section 1985 claims and runs from the date of each overt act causing damage to a plaintiff."  Dique v. N.J. State Police, 603 F.3d 181, 189 (3d Cir. 2010).  Although Smart provides minimal allegations directly in support of his conspiracy count, see SAC ¶ 119, his underlying factual allegations suggest it is based on Defendants' conduct leading to his arrest and suspension around August 25, 2014, id. at ¶¶ 42, 45-48, 56-59.[9]  Smart therefore was required to file his conspiracy claim within two years of that date.  Because Smart failed to add this claim until filing his Second Amended Complaint in August 2020, it is untimely.

Further, unlike Smart's other claims, this claim does not relate back to Smart's original complaint.  Smart failed to include sufficient factual allegations in that complaint to adequately notify Defendants of a possible § 1985 conspiracy claim.  See Glover, 698 F.3d at 146.  Specifically, he did not allege any facts to suggest the existence of an agreement and concerted action by the Defendants to deprive him of equal protection of the laws because of his race.  See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (to state a § 1985 conspiracy claim, "a plaintiff must allege:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection

---

[9]  To the extent Smart argues that his conspiracy claim began accruing when he was exonerated of the criminal charges against him in October 2018, see Resp. at 15, he fails to allege sufficient facts to show that defendants continued a conspiracy to deprive him of his constitutional right of equal protection after his arrest and suspension.  See SAC ¶¶ 42-43, 65-66.

of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States"); Steele v. Pub. Def. Middlesex Cnty., No. 19-412, 2021 WL 2850464, at *4 (D.N.J. July 8, 2021) ("[T]o plead a claim premised on a conspiracy, a plaintiff must allege facts showing actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy.").

Smart's § 1985 conspiracy claim is dismissed with prejudice.

### H. Count VIII - Malicious Prosecution Under New Jersey Law

Smart contends that Defendants knowingly and maliciously instituted a "baseless criminal action" against him. SAC ¶ 124. Defendants argue that this claim must be dismissed because Smart: (1) has failed to plead he provided notice pursuant to the New Jersey Tort Claims Act, N.J. Stat. §§ 59:1-1, et seq. ("TCA"); (2) has failed to state a plausible claim for malicious prosecution. I agree that Smart has failed to state a plausible claim of malicious prosecution against Glaze but otherwise reject Defendants' arguments.

#### 1. Failure to Plead Notice of Tort Claim

The County argues that this claim must be dismissed because Smart has not pled that he provided notice of the claim as required by the TCA. Schmidheiser and McLaughlin agree that Smart has not pled that he provided notice but also have provided a copy of a "purported" notice of tort claim from Smart's counsel to the County (the "Notice"), which they contend failed to adequately identify them. Schmidheiser Mot. to Dismiss at 21; see also id., Ex. 13. Smart acknowledges he provided the Notice. See Resp. at 16.

The TCA requires plaintiffs to provide notice of a common law tort claim, including a claim of malicious prosecution, against public entities and officials, to the public entity within 90 days of the "accrual of a cause of action." N.J. Stat. § 59.8-8; see also N.J. Stat. § 59.8-10; Wiltz

---

have known that no crime was committed"; and (c) "[t]he County's employees and agents failed and were negligent in their investigation of witnesses, documents and records related to this prosecution." Id.

Although the Notice does not identify Schmidheiser, McLaughlin, and Glaze by name, that omission does not render it invalid. Henderson v. Herman, 862 A.2d 1217, 1223-24 (N.J. Super. Ct. App. Div. 2004) (failure to specifically identify employees was a technicality that did not invalidate the notice). The County was already aware of Smart's allegations against these employees because he had identified them in his original complaint. See 8/19/2016 Compl. ¶¶ 17-18, 22; Henderson, 862 A.2d at 1223 (TCA is designed to provide public entity with sufficient information to evaluate its liability and potential exposure). Moreover, Smart was not required to identify Schmidheiser and McLaughlin because his allegations concern their status as Union officials, not as corrections officers. See supra Section IV.D.3.

2.   Failure to State a Plausible Claim

Defendants next argue that Smart's malicious prosecution claim must be dismissed because they did not initiate the prosecution against him and he fails to allege that there was no probable cause for the prosecution.

"Under New Jersey law, a malicious prosecution claim requires proof of four elements: '(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff.'" Gould v. JPMorgan Chase Bank, N.A., No. 21-04663, 2021 WL 4272858, at *2 (D.N.J. Sept. 21, 2021) (quoting Lind v. Schmid, 337 A.2d 365, 368 (N.J. 1975)). The institution element requires more than simply reporting the plaintiff to the police. Id. There "must be encouragement, participation in, and perhaps even pressure

asserted on the charging authorities."  Id.  Probable cause means there were factual

circumstances that would "lead a person of ordinary prudence to believe on reasonable grounds

the truth of the charge at the time it was made[.]"  Id. (quoting Brunson v. Affinity Fed. Credit

Union, 972 A.2d 1112, 1121 (N.J. 2009))

    Smart alleges that Schmidheiser, McLaughlin, and Caldwell did more than simply report

a potential crime.  He asserts that: (a) Schmidheiser and McLaughlin failed to provide complete

information to PP&D, which caused it to conclude that he did not properly account for the Local

Union's finances; (b) although Schmidheiser, McLaughlin, and Caldwell knew Smart had not

committed a crime, they sought to have him prosecuted; (c) Caldwell encouraged Schmidheiser

and McLaughlin to file charges with the prosecutor and arranged a meeting for them with the

prosecutor; and (d) Schmidheiser and McLaughlin never fully produced the Local Union receipts

to the prosecutor.  SAC ¶¶ 42-60.  Those allegations are sufficient to plausibly establish that

Schmidheiser, McLaughlin, and Caldwell initiated or encouraged the prosecution against Smart,

knowing that PP&D's conclusions were inaccurate because they failed to provide PP&D with

full financial information.  See Gould, 2021 WL 4272858, at *2-3 (plaintiff plausibly established

malicious prosecution claim by alleging defendant provided police with inadequate report of

theft).

    Smart, however, fails to include any allegations to plausibly establish that Glaze

encouraged or participated in the prosecution against him.  The malicious prosecution claim is

dismissed against Glaze without prejudice.

### I.  Count IX – Fourth Amendment Malicious Prosecution Under § 1983

    Smart also brings a Fourth Amendment malicious prosecution claim under § 1983 against

all Defendants, alleging they knowingly and maliciously instituted a "baseless criminal action"

against him.  SAC ¶ 130.  Defendants argue that Smart fails to state a plausible claim for various reasons.  I agree.

To prevail on his Fourth Amendment malicious prosecution claim, Smart must allege facts to plausibly show: "(1) [Defendants] initiated a criminal proceeding; (2) the criminal proceeding ended in [Smart's] favor (3) [Defendants] initiated the proceeding without probable cause; (4) [Defendants] acted maliciously or for a purpose other than bringing [Smart] to justice; and (5) [Smart] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir.2007).  For the fifth element, Smart cannot simply allege that he was incarcerated; he also must allege that he was "incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that []he endured any other 'post-indictment' deprivation of liberty as a result of the legal proceedings." Wiltz v. Middlesex Cty. Off. of Prosecutor, 249 F. App'x 944, 949 (3d Cir. 2007).  Because Smart alleges only that he was arrested in conjunction with his prosecution, he fails to plausibly allege facts to prove the fifth element of his claim.  See SAC ¶ 54; Wiltz, 249 F. App'x at 949.

This claim also suffers from the same impediments as Smart's other § 1983 claims and common law malicious prosecution claim.  Smart fails to allege how the County, Caldwell, or Glaze acted pursuant to a specific policy, practice, or custom.  See supra Section IV.D.2; SAC ¶ 132 ("Defendants acted pursuant to an official policy, practice or custom maintained at all relevant times herein.").  He likewise fails to plead how Schmidheiser, McLaughlin, the Local Union, or the State Union were acting under color of state law.  See supra Section IV.D.3. Finally, he fails to plausibly allege that Glaze initiated the criminal prosecution against him.  See supra Section IV.H.2.

Smart's Fourth Amendment malicious prosecution claim is dismissed without prejudice.

An appropriate order follows.