IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (CAMDEN)

| | | |
|---|---|---|
| DERRICK SMART, et al. | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 20-cv-12408-RAL |
| COUNTY OF GLOUCESTER, et al. | : | |
| Defendants. | : | |

**RICHARD A. LLORET**  **January 29, 2024**
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Plaintiff Derrick Smart ("Smart" or "Plaintiff") has sued Eugene Caldwell ("Caldwell") among other named Defendants[1] in an eight-count complaint. At my direction Smart and Caldwell have provided supplemental briefing on whether summary judgment is appropriate on Count VII. The count alleges a First Amendment Retaliation claim, under 42 U.S.C. § 1983, solely against Caldwell. I grant summary judgment.

## FACTUAL HISTORY

I have previously outlined the factual and procedural history of this matter. *See* Doc. No. 113, at 2-12. Here, I outline only the factual history relevant to the discussion of the remaining § 1983 First Amendment Claim.

Derrick Smart was employed as a correctional officer ("C/O") with the Gloucester County Sheriff's Office beginning in 2004. Doc. No. 29, Plaintiff's Third Amended Complaint ("TAC"), at ¶ 1. Below are the undisputed facts.

---

[1] Smart filed a lawsuit against the County of Gloucester ("the County"), Eugene Caldwell ("Caldwell"), William Glaze ("Glaze") (collectively "the County Defendants"); Brad Schmidheiser ("Schmidheiser"), Michael McLaughlin ("McLaughlin") (Schmidheiser and McLaughlin collectively are "the Union Officials"); the Local Fraternal Order of Police #97 ("Local 97"), the New Jersey Fraternal Order of Police ("the State FOP") (Local 97 and the State FOP collectively are "the FOP Defendants"); and John Does 1-5 in an eight-count complaint. Doc. No. 29.

1

### A.     Smart's Protected Acts

Smart both reported and aided reporting of alleged misconduct in the workplace. In April 2008, Smart complained to County Administrator Chad Bruner ("Bruner") and Freeholders DeMarco and Sweeney that Warden Balicki ("Balicki") engaged in inappropriate relations with female C/Os. *Id.* at ¶ 22-23, 33. In October 2008, Smart complained to then-Warden Darryl Johnson, Internal Affairs ("IA") Investigator Wayne Young, Hearing Officer Raymond Childs, and Hearing Officer Maureen McClain that certain A-Shift officers, supervised by then-Sergeant Caldwell,[2] often assaulted minority inmates. *Id.* at ¶¶ 24-25. In October 2010, Smart assisted Malessia Lacey ("Lacey"), a female C/O, in filing a complaint with the Equal Employment Opportunity Commission. *Id.* at ¶¶ 35-36. In June 2011, Smart complained to Freeholder Larry Wallace that Caldwell engaged in inappropriate sexual relations with female inmates. *Id.* at ¶¶ 38-41. In November 2011, Smart provided a written complaint to the Gloucester County Prosecutor's Office reasserting the complaint against Caldwell. *Id.* at ¶ 41. Between March and July 2013, Plaintiff voiced "opposition to the Jail's closure." *Id.* at ¶¶ 47-49.

### B.     Local 97 Treasurer Transition from Smart to McLaughlin

Between January 2008 and December 2011, Smart was the Treasurer of FOP Lodge Local 97 ("Local 97").  McLaughlin was elected Treasurer in January 2012. Michael McLaughlin Deposition ("McLaughlin Dep."),[3] at 65:6-14. As the new Treasurer, McLaughlin requested from Smart all financial documents and reports to review. Derek Smart Deposition ("Smart Dep."), at 324:1-325:6; 334:2-335:23.[4] In

---

[2] Defendant Eugene Caldwell, II, was a corrections officer of Gloucester County and held the positions of Sergeant, Lieutenant, and Deputy Warden before he was promoted to Warden in 2013. *See* TAC at ¶ 5; Caldwell Dep. at 9:3-22.
[3] McLaughlin's deposition was filed as County Defendants' Exhibit 10. Doc. No. 81-1, at 32-67.
[4] Smart's deposition was filed as County Defendants' Exhibit 2. Doc. Nos. 80-4, at 24-74; 80-5.

2

January 2012, McLaughlin informed Schmidheiser, Local 97's sitting President, of his concerns regarding record keeping and account expenditures during Smart's tenure as Treasurer. Brad Schmidheiser Deposition ("Schmidheiser Dep."),[5] at 56:24-60:23.

In 2012, Schmidheiser went to Warden Caldwell to provide a "heads up" that he would be "tak[ing] something to the Prosecutor's Office regarding [Local] 97." Schmidheiser Dep. at 177:2-16. Caldwell offered to reach out to the Prosecutor's Office to determine which department Schmidheiser should direct his inquiry. *Id.* at 177:16-22. Through Caldwell's communications, Detective Anthony Garbarino ("Garbarino"), a detective with the Prosecutor's Office's Major Crimes Unit, contacted Schmidheiser; Garbarino also alerted Caldwell that he was arranging the meeting. Anthony Garbarino Deposition ("Garbarino Dep."),[6] at 7:7-10; 19:8-9; 20:9-21:5; Gloucester County Prosecutor's Office Investigation Report ("GCPO Investigation Report"),[7] at 1.

### C. Smart's Employment Status During and After Prosecution

After Garbarino's investigation, Smart was arrested on August 22, 2014. GCPO Investigation Report, at 25; Complaint-Warrant.[8] On August 25, 2014, County Human Resources confirmed Smart's employment was suspended without pay due to the criminal charges. August 25, 2014, Letter from Joann Schneider, County Human Resources, and attached Preliminary Notice of Disciplinary Action ("8/25/14 Disciplinary Package"), at 1.

---

[5] This portion of Schmidheiser's deposition was filed as County Defendants' Exhibit 5. Doc. No. 81, at 1-56.
[6] This portion of Garbarino's deposition was filed as County Defendants' Exhibit 17. Doc. No. 81-2, at 69-90.
[7] The Report was filed as the Union Officials' Exhibit M. Doc. No. 79-5, at 14-39.
[8] The Arrest Warrant was filed as the Union Officials' Exhibit O. Doc. No. 79-5, at 44-46.

The criminal charges resulted in acquittal on October 4, 2018. On October 17, 2018, Smart received a letter notifying him that his suspension without pay was retroactively converted to an administrative suspension with pay and that an administrative internal affairs investigation ("IA investigation") would be completed prior to formal employment reinstatement. *See* Doc. No. 92-6, Smart's Exhibit T ("10/17/18 Knestaut Letter to Smart"), at 66-67. On March 20, 2019, Smart was notified via letter that the IA investigation was closed, and he should report to work the next day. Doc. No. 79-5, Exhibit V ("3/20/19 Smart Email to Johnson").[9]

## DISCUSSION

I assess whether summary judgment is appropriate under the well-known standard spelled out in Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is evidence from which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To defeat summary judgment, the opposing party must respond with facts of record that contradict the facts shown by the moving party. The opposing party may not simply deny the moving party's showing. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n.3 (1986). I have previously elaborated on the legal standards applicable to a summary judgment motion and will not repeat the elaboration here.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (internal cites excluded). To sustain a § 1983 First Amendment retaliation claim,[10] 1) "a plaintiff must show that his conduct was

---

[9] This email was filed as the Union Officials' Exhibit V. Doc. No. 79-5, at 73-75.
[10] As the Third Amended Complaint and Smart's briefings assert only a First Amendment Speech claim, not a First Amendment Association claim, I find that the association claim is waived pursuant to the

4

constitutionally protected," 2) "he must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action," and 3) "the defendant may defeat the plaintiff's case 'by showing that it would have taken the same action even in the absence of the protected conduct.'" *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (internal quotations and citations omitted).

### A. Plaintiff Engaged in Constitutionally Protected Activity.

Plaintiff submits there is a genuine issue of material fact whether Smart engaged in protected activity. Doc. No. 117, at 2-4. Defendant Caldwell's brief does not contest that Smart engaged in constitutionally protected speech. Doc. No. 116, at 2-6 (outlining the following protected activities: Smart's complaint against Warden Balicki; Smart's complaint that A-Shift officers were engaging in routine assaults of minority inmates; Smart's assisting C/O Lacey with filing a complaint; Smart's complaint against Defendant Caldwell; and Smart's vocal opposition against the closure of the County jail.) As Defendant Caldwell's argument tacitly acknowledges that the various outlined speech-related conduct constitutes First Amendment protected speech, *id.*, I proceed under the assumption that Smart engaged in protected speech.

### B. Defendant Caldwell did not Engage in a Retaliatory Employment Action.

Caldwell asserts two arguments, first, that the record contains no evidence that Caldwell knew of the protected conduct. Doc. No. 116, at 2-6. Second, Caldwell argues there is no evidence that Caldwell retaliated against Smart by an adverse employment action. *Id.* at 6-9. I look at each separately.

---

pleadings and accordingly limit summary judgment review to the First Amendment Speech claim. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("explaining that a party waives an issue if he fails to raise it in his opening brief.")

       *1.*    *Defendant Caldwell did not Know of the Protected Conduct.*

A plaintiff must demonstrate that "the defendant engaged in retaliatory action . . ." *Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 863–64 (3d Cir. 2019) (internal citations omitted). "It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose*, 303 F.3d at 493 (citing *Allen v. Iranon*, 283 F.3d 1070, 1076 (9th Cir.2002) ("finding in First Amendment retaliation case that '[i]n order to retaliate against an employee for his speech, an employer must be aware of that speech.'")).

The record must contain "direct evidence" that the defendant knew of the protected conduct when the defendant engaged in the retaliatory act. *Id.* at 496. In *Ambrose*, the Third Circuit held that the record did not contain this requisite direct evidence. Each Commissioner "denied knowing of the [protected act] before the [retaliatory act] . . .". *Id.* at 493. While the Court found mere denials were not dispositive, it was persuaded because "Ambrose fail[ed] to point to any other evidence showing that [the commissioners] did know about [Ambrose's protected act.] [Ambrose] bears the burden of proof, but fails to sustain it." *Id.*

The Third Circuit has applied *Ambrose* to summary judgment decisions. In *Weil v. White*, the Court upheld dismissal of the plaintiff's § 1983 First Amendment Retaliation claim because the record did not contain "evidence that [the defendants] knew of Weil's speech before Weil was dismissed from CMA." 629 F. App'x 262, 265-66 (3d Cir. 2015) (non-precedential). The same analysis applies here.

There are five possible protected acts that could serve as the predicate for Caldwell's alleged retaliation. *See* TAC, at ¶¶ 22-25, 33, 35-36, 38-41, 47-49. In the Third Amended Complaint, each factual allegation sets forth that these complaints were not

made directly to Caldwell. *Id*. Smart does not identify any direct evidence that Caldwell knew that Smart made these complaints.

> i. Smart's April 2008 Complaint, October 2008 Complaint, and October 2010's Assistance in an EEOC Complaint.

Smart points to no direct evidence that Caldwell was aware of these three complaints. Caldwell testified that he was never assigned to investigate any complaints of any nature while employed as a Sergeant and Lieutenant. Caldwell Dep., at 35. He further testified that the only person who could direct an IA investigator to investigate a complaint was the Warden. *Id*. at 37. Caldwell became Warden in 2013. See TAC at ¶ 5; Caldwell Dep. at 9:3-22. No other direct evidence indicates or implies that Caldwell knew of these complaints.

> ii. Smart's June and November 2011 Complaints Against Caldwell.

There is no direct evidence that Caldwell knew Smart made the complaints against Caldwell. During his deposition, Caldwell testified that he recalled being subject to an IA investigation for fraternization, but he did not recall who made the complaint. Caldwell Dep., at 40-41, 46; 64-68. Further, the record contains the IA paperwork for this IA investigation against Caldwell. Doc. No. 92-7, Exhibit X ("Caldwell IA Package"). The IA Package does not contain any reference to Smart. *Id*. at 2-91 (Bates stamped "County Confidential 000532"). The IA Package indicates Caldwell was aware of the investigation. *Id*. at 56 (Bates stamped "County Confidential 000497") (Caldwell sent an email regarding the internal investigation against him). However, the question before me is not whether Caldwell was aware of an IA investigation, but, rather, was he aware of *who* made the complaint. On that score, the record reveals no genuine issue of material fact sufficient to survive summary judgment.

7

          iii.        Smart's 2013 Complaints Against the Jail Closure.

As with the other protected acts, Smart does not point to any direct evidence of Caldwell's knowledge of the complaints. Caldwell acknowledged he attended meetings regarding the prison closure between March and July 2013. Caldwell Dep. at 77. He does not recall if Smart was in attendance or spoke out at those meetings, even though he is aware that most members spoke out against the closure, and he didn't "blame them." *Id.* at 77-78. Smart's Response does not address Caldwell's knowledge of Smart's alleged protected act.[11] Doc. No. 117, at 5.

Smart's failure to respond is sufficient to find the argument abandoned or waived. *See McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193–94 (E.D. Pa. 2022) (Marston, J.) ("District courts in the Third Circuit have held that 'when a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure "constitutes an abandonment of those causes of action and essentially acts as a waiver of th[o]se issues."' *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (quoting *Skirpan v. Pinnacle Health Hosps.*, No. 1:07-cv-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010))"); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 433 (E.D. Pa. 2008); *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995); *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986)).

---

[11] Smart's response does not claim that he complained to Caldwell. Rather, Smart speculates that because Caldwell was a "senior commander in Plaintiff's chain of command," Caldwell therefore knew about the "material incident[], and by virtue of his position, knew about Plaintiff's protected conduct" regarding each complaint but Smart's objection to the jail closure. Doc. No. 117, at 5.

8

Further, even if Smart included this act in his analysis, mere speculation is insufficient to survive summary judgment. *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (internal citations omitted). Caldwell testified he does not recall Smart's complaint. This testimony, without any contradicting evidence, is insufficient to create a material dispute as it requires speculation, not inference, in Smart's favor.

For the reasons above, I find that the record contains no genuine issue of material fact regarding Caldwell's awareness of the protected acts. Smart's § 1983 First Amendment claim fails to survive summary judgment.

> 2. *Caldwell did not Retaliate Against Smart.*

Caldwell next argues that the alleged acts are not retaliatory because they are *de minimis*. Doc. No. 116, at 6-9. Smart does not respond to this argument. *See* Doc. No. 117, at 6-9. Once more, Smart's lack of response is sufficient to find the argument abandoned. *See McCowan*, 603 F. Supp. 3d at 193–94 (internal citations omitted). Summary judgment is appropriate.

The record shows no material issue of fact. A retaliatory act occurs when "[a] public employer 'adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights.'" *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir.2000)). Courts have previously declined to find a retaliatory act in mere "criticism, false accusations, or verbal reprimands." *Id*. (quoting *Suarez Corp. Industries*, 202 F.3d at 686). "To be actionable as a general matter, the alleged retaliatory conduct must have

had more than a *de minimis* impact on the plaintiff's First Amendment rights." *Willson v. Yerke*, 604 F. App'x 149, 151 (3d Cir. 2015) (non-precedential).

There are three alleged retaliatory acts: 1) Caldwell caused Smart's criminal prosecution by acting as a liaison between the Prosecutor's Office and Schmidheiser, 2) Caldwell's letter to Smart regarding Smart's suspension without pay and HR's confirmation of the employment status; and 3) the County's conversion of Smart's leave without pay to leave with pay. TAC at ¶ 95. First, as a matter of law, Caldwell contacting the Prosecutor's Office is not a retaliatory act for a § 1983 First Amendment claim. *See Brennan*, 350 F.3d at 419 (internal citation omitted). Second, the record does not contain a letter signed by Caldwell. There is a letter from Joan Schneider indicating the change in employment status. Doc. No. 82, Exhibit 21. It is a reasonable inference that Caldwell may have given this letter to Smart; however, that inference does not create an issue of fact that Caldwell made the adverse employment decision. Third, the conversion of Smart's leave without pay to leave with pay pending the IA was not under Caldwell's purview and Smart does not direct me to any evidence indicating otherwise. *See* Doc. No. 113, at 62-63. Summary judgment is appropriate.

### C. There is no Causal Link Between the Protected Speech and the Retaliatory Conduct.

To show a causal nexus, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Carmichael v. Thomson*, No. 1:14-CV-3323-NLH-AMD, 2023 WL 1883347, at *10 (D.N.J. Feb. 10, 2023) (quoting *Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. Appx. 126, 133 (3d Cir. 2017) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480

10

F.3d 259, 267 (3d Cir. 2007))). Here, Caldwell submits that there is no causal nexus. Doc. No. 116, at 9. Smart argues that there is a causal nexus both temporally and because Smart and Caldwell antagonized each other. Doc. No. 117, 7-8. I find that there is no causal relationship as a matter of law; summary judgment is appropriate.

There is approximately one year between the two closest acts of possible First Amendment protected speech and alleged retaliation. A temporal link alone is insufficient to establish a causal link as one year is not "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal citations and quotes omitted); *see also Est. of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding appropriate temporal proximity); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d. Cir. 1997) (finding inappropriate temporal proximity)).

When temporal proximity fails, "'timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be unduly suggestive.'" *McNeilly v. City of Pittsburgh*, 40 F. Supp. 3d 643, 654 (W.D. Pa. 2014) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (discussing *Jalil*, 873 F.2d at 708)). Such other evidence may be a "pattern of antagonism." *Id.* at 280-81. However, Plaintiff does not cite to evidence of Caldwell directly antagonizing Smart. *See* Doc. No. 113, at 58-63.

The record does not contain evidence which would create a genuine issue of material fact; summary judgment is appropriate.[12]

---

[12] Having found that summary judgment is appropriate for several reasons, I need not address additional arguments made in the parties' briefing.

11

## CONCLUSION

"[A]wards of summary judgment are as rare as hen's teeth in First Amendment retaliation cases[,]" but this case qualifies; I grant summary judgment as to Count VII with prejudice because Plaintiff has not "produce[d] sufficient evidence to shift the burden of persuasion to defendants." *Perna v. Twp. of Montclair*, 409 F. App'x 581, 583 (3d Cir. 2011) (non-precedential). Plaintiff has not shown a genuine issue of material fact demonstrating that Caldwell knew of the protected acts. Plaintiff has failed to establish a genuine issue of material fact demonstrating a causal relationship between the protected activities and alleged retaliation. Plaintiff has not shown a genuine issue of material fact demonstrating that Caldwell, not the County, was the one who engaged in the alleged retaliatory acts.

An order will enter granting summary judgment as to Count VII.

**BY THE COURT:**

*s/Richard A. Lloret*
**HON. RICHARD A. LLORET**
**United States Magistrate Judge**