## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (CAMDEN)

| | | |
|---|---|---|
| DERRICK SMART, et al. | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No.  20-cv-12408-RAL |
| COUNTY OF GLOUCESTER, et al. | : | |
| Defendants. | : | |

**RICHARD A. LLORET**  February 8, 2024
**U.S. Magistrate Judge**

### MEMORANDUM OPINION

Plaintiff Derrick Smart ("Smart" or "Plaintiff") filed an eight-count complaint against various defendants.[1] I entered summary judgment July 11, 2023 as to all counts except Count VII. Doc. No. 113. Mr. Smart has filed a motion to amend or alter the judgment, under Fed. R. Civ. Pro. 59(e) (the "Motion"), seeking to overturn the result as to Count VI, a claim for malicious prosecution against Schmidheiser and McLaughlin, the Union Officials, under New Jersey common law. Doc. No. 118. The Union Officials filed a response to the Motion. Doc. No. 120. I entered an order directing supplemental briefing and a hearing. Doc. No. 121. Smart filed a "statement of evidence" (Doc. No. 122) and a supplemental memorandum (Doc. No. 124). The Union Officials filed a supplemental memorandum (Doc. No. 126), a response to Plaintiff's evidentiary statement (Doc. No. 126-1), and a certification (Doc. No. 126-2). I held oral argument on

---

[1] Smart filed a lawsuit against the County of Gloucester ("the County"), Eugene Caldwell ("Caldwell"), William Glaze ("Glaze") (collectively "the County Defendants"); Brad Schmidheiser ("Schmidheiser"), Michael McLaughlin ("McLaughlin") (Schmidheiser and McLaughlin collectively are "the Union Officials"); the Local Fraternal Order of Police #97 ("Local 97"), the New Jersey Fraternal Order of Police ("the State FOP") (Local 97 and the State FOP collectively are "the FOP Defendants"); and John Does 1-5 in an eight-count complaint. Doc. No. 29.

January 3, 2024. Doc. No. 128 (transcript). The parties filed additional exhibits pursuant to my direction. Doc. Nos. 129-131.

"A motion for reconsideration requires the movant to show (1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021). Mr. Smart proceeds[2] under the third prong, contending there has been a clear error of law and a manifest injustice.

At the outset, I do not agree with the parties that the Plaintiff must satisfy the strict requirements of Federal Rule of Civil Procedure 59(e). My order granting summary judgment (Doc. No. 114) did not resolve all claims as to all parties, and so was not a "judgment" subject to Rule 59(e). Rule 54(a) defines the word "judgment" under the Federal Rules of Civil Procedure to mean a judicial act from which an appeal lies. Rule 54(b) makes any decree resolving less than all claims against all parties non-appealable, with certain exceptions not applicable here. My order was not appealable, therefore not a "judgment" within the meaning of Rule 54, and therefore not subject to Rule 59(e). Thus, I review Plaintiff's Motion under the substantial discretion granted a trial judge to review non-final orders. *Pellicano v. Blue Cross Blue Shield Ass'n*, 540

---

[2] Mr. Smart also invokes New Jersey Local Civil Rule 7.1(g), which "provides that a party may, within ten days of the entry of an order adverse to that party, move for reargument upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. *U.S. v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J. 1999) (citation omitted). "The operative word in the rule is 'overlooked.' Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument . . . Only where the court has overlooked matters that, if considered by the court, might reasonably have resulted in a different conclusion, will it entertain such a motion. . . *Id*. (citations omitted). I did not overlook the Plaintiff's arguments, factual or legal, about the institution element. I considered the Plaintiff's arguments, such as they were. I found his position unconvincing.

2

Fed.Appx. 95, 98 (3d Cir. 2013); *Qazizadeh v. Pinnacle Health Sys.*, 214 F.Supp.3d 292, 295–96 (M.D. Pa. 2016) (the court may permit reconsideration whenever consonant with justice to do so) (internal quotations and citations omitted). Federal Rule of Civil Procedure 1 requires me to construe and administer the rules to secure "the just, speedy, and inexpensive determination of every action and proceeding." I am keenly aware of the legitimate complaint that Plaintiff is taking a (much disfavored) second bite of the litigation apple, having failed adequately to raise his arguments in the original summary judgment briefing. I will balance these concerns against the concern that substantial justice be done.

My initial opinion resolving the malicious prosecution count focused on whether the Union Officials had "initiated" a prosecution, under New Jersey law:

> The Union Officials argue summary judgment is appropriate, because "it is not plausible that they 'initiated' a criminal action . . . ." Doc. No. 79-2, at 30. Smart neglects to respond to whether the Union Officials initiated the prosecution and instead claims that "[t]here is no dispute that a criminal prosecution was brought against Plaintiff." Doc. No. 92-2, at 14. Smart's assertion misses the point.
>
> The plaintiff must show that the defendant played "an active part in instigating or encouraging the prosecution." *Falat v. Cnty. of Hunterdon*, No. A-2479-15T1, 2018 WL 3554139, at *8 (N.J. Super. App. Div. July 25, 2018) (quoting *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156 (N.J. Super. App. Div. 2004)). An active part includes advising or assisting or taking an active part in directing or aiding the conduct of the case. *Id.* (collecting cases).
>
> *Trabal v. Wells Fargo Armored Service Corp.* provides an example of an active role. *See* 269 F.3d 243 (3d. Cir. 2001). Wells Fargo Security Loss Prevention Manager, William Cianci ("Cianci"), initiated an IA investigation regarding a missing money bag. *Id.* at 246. This investigation included taking sworn statements of other employees and reviewing suspects credit histories prior to speaking with police. *Id.* at 246-47. On June 22, 1993, "Cianci summoned Det. Sgt. Mileski of the Lynhurst police to the Wells Fargo facility and both men re-interviewed the employees." *Id.* Cianci then "filed a criminal complaint against [the Plaintiffs]" on June 24, 1993. *Id.* On June 29, 1993, Det. Sgt. Mileski interviewed two

3

additional employees. *Id*. At summary judgment, the district court determined that the parties did not contest if Cianci initiated proceedings; the Third Circuit found this was a proper determination. *Id*. at 248.

The Union Officials also point to *Johnson v. DeBiaso*. *See* No. L-12045-06, 2009 WL 1065994 (N.J. Super. App. Div. 2009). *Johnson* concerned a malicious prosecution claim brought by a former teacher after the school district provided a letter outlining a possible crime for misuse of insurance, but "did not request that a criminal prosecution be initiated or that any other action be taken by the prosecutor." *Id*. at *2. Upon receipt of the letter, the prosecutor's office initiated their own investigation, a Sergeant of the Prosecutor's Office signed a complaint against the plaintiff, and the Prosecutor's Office presented a grand jury with an indictment. *Id*. The matter went to trial and resulted in an acquittal. *Id*. In the malicious prosecution case, defense filed a motion for summary judgment arguing that the defendants did not initiate the criminal prosecution, rather, the prosecutor's office did. *Id*.

The trial court held that there "is no evidence in which a jury could infer that the school district assisted in the process of presentation to the grand jury, encouraged the prosecutor, participated in the criminal investigation by the prosecutor of the charges." *Id*. at *4 (internal quotations and citations omitted). The appellate court upheld this decision, because the record did not "suggest that defendants did anything more than pass along the information they obtained through their investigation. They did not exert any pressure on the prosecutor to bring criminal charges against plaintiff. Indeed, they did not even request that the prosecutor [bring criminal charges.]" *Id*. at *5. Rather, the appellate court determined that the defendants "remained on the sidelines" through the process, because the prosecutor's office engaged in an independent investigation, made its own determination for probable cause, a law enforcement officer with the prosecutor's office signed the complaint, the prosecutor's office presented the matter to a grand jury, and that grand jury found probable cause. *Id*.

I look at McLaughlin and Schmidheiser's conduct separately. The evidence, in the light most favorable to Smart, does not indicate that McLaughlin played an active role in alerting criminal authorities of possible misappropriation.

There is no evidence that McLaughlin "encouraged" or played "an active part" via advising, assisting, directing, or aiding the criminal prosecution. *Falat*, 2018 WL 3554139, at *8 (quoting *Epperson*, 862 A.2d 1156). McLaughlin reviewed the records under Smart's tenure as Local 97's Treasurer. Smart Dep. At 324:1-325:6; 334:2-335:23. McLaughlin alerted Schmidheiser of his concerns when he did not receive the requested information and provided documentation summarizing his concern.

4

>    Schmidheiser Dep. At 56:24-60:23. McLaughlin asked Smart for clarification once again. 2/7/12 McLaughlin Letter, at 1. The key difference between McLaughlin's actions and *Trabal*'s facts are that after the FOP's internal audit was completed, it was Schmidheiser, not McLaughlin, who went to the Prosecutor's Office. Schmidheiser Dep. At 177:2-16.
>
>    As for Schmidheiser, the record too fails to establish that he initiated the prosecution. The record shows that Schmidheiser emailed Kline inquiring "[i]f for any reason it is determined there are grounds for criminal charges or an investigation, who would initiate that, the State Lodge, Lodge 97, or will this be a joint venture." 11/23/12 Kline-Schmidheiser Emails, at 3. In response, Kline told him that any criminal complaints should be filed by Local 97. 11/23/12 Kline-Schmidheiser Emails, at 5. Schmidheiser had already decided to report the matter to criminal authorities prior to speaking with Caldwell. Schmidheiser Dep. At 177:2-16. After going to the prosecutor's office, Schmidheiser only spoke with authorities twice during the investigation period and sent one email with information requested by the investigator. GCPO Investigation Report, at 13-16. There is no evidence that Schmidheiser "encouraged" or played "an active part" in the investigation, no evidence that he provided any advice or assistance, and no evidence that he signed a criminal complaint or directed the conduct of the case after going to authorities. *Falat*, 2018 WL 3554139, at *8 (quoting *Epperson*, 862 A.2d 1156); *Johnson*, 2009 WL 1065994. At most Schmidheiser filed the initial report, based on an independent audit, and responded to the investigator's request.
>
>    I find that the Union Officials did not "initiate" a prosecution as defined by New Jersey malicious prosecution caselaw. As a result, the first of the four elements required for a malicious prosecution fails. *See LoBiondo*, 970 A.2d at 1022 (citing *Lind*, 337 A.2d 365). "[E]ach element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." *LoBiondo*, 970 A.2d at 1022. Since the Union Officials did not initiate the prosecution, Smart fails both under the *LoBiondo* case and the requirements for a Plaintiff responding to summary judgment. *Berckeley*, 455 F.3d at 201 (When the party opposing summary judgment is the plaintiff who bears the burden of proof at trial, the plaintiff must "make a showing sufficient to establish the existence of [every] element essential to that party's case."). As my finding that the Union Officials did not initiate the prosecution is sufficient to grant summary judgment, I do not resolve the probable cause question.

Doc. No. 113 at 47–51.

Mr. Smart did not address the Defendants' arguments about the initiation prong in his summary judgment response. *See* Doc. No. 121 at 2–3. Plaintiff's memoranda and

evidentiary submission (Doc. Nos. 118, 122, and 124) do a better job of arguing the law and making specific references to the record.

## DISCUSSION

To succeed on a malicious prosecution claim, a plaintiff bears the burden of proving four elements, the first of which is that "a criminal action was instituted by this defendant against this plaintiff . . ." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (citing *Lind v. Schmid*, 337 A.2d 365 (N.J. 1975)). Neither of the Union Officials filed a criminal complaint or lodged a criminal indictment. The Gloucester County Prosecutor's Office ("GCPO") investigated the case for almost a year after the initial disclosure of information. The GCPO collected evidence and made the determination to pursue an indictment. The GCPO presented its evidence to the grand jury, which concluded that there was probable cause to believe that Smart and embezzled money. A judge concluded there was probable cause.

In his motion for reconsideration, Mr. Smart cites to the *Lind* case, and says that "[t]he key facts of malicious prosecution are that defendants concealed the receipts from PP&D and the prosecutor's office and then lied about the concealment of the receipts in their deposition in the case at bar." Doc. No. 118, at 16. Mr. Smart alleges that the Union Officials withheld certain documents from the GCPO. The documents were received from Mr. Ford, the disgruntled tax preparer Mr. Smart had retained while Smart was Treasurer of the Union. I will refer to these documents as the "Ford documents." Mr. Smart claims that among the Ford documents were receipts that would have documented that Mr. Smart's expenditures were legitimately made for the benefit of the Union. Doc. No. 118, at 16. Mr. Smart contends that there is evidence from which a jury could conclude that the Union Officials concealed the Ford documents from the GCPO.

6

Doc. 118 at 3–10. Mr. Smart argues that this is enough to initiate a prosecution, under New Jersey malicious prosecution law.

When writing my initial opinion, I found the *LoBiondo*, *Falat*, and *Johnson* cases particularly helpful. These cases postdate the *Lind* case, cited by Mr. Smart in his reconsideration motion, and provide insights about the effect of a prosecutor's investigation and pursuit of indictment that *Lind* cannot, given its set of facts. I was struck by the following language in *Johnson*, which could have been written about Smart's case:

> The prosecutor then conducted its own investigation. It reached out to representatives of the District and the Fund to verify relevant information and to obtain documentation to support it. Based upon its independent investigation, the prosecutor's office determined that probable cause existed to issue a complaint, and a law enforcement officer from the prosecutor's office signed that complaint. The matter was then presented to an independent grand jury, which found probable cause to return an indictment. Throughout this entire process, defendants remained on the sidelines, neither encouraging nor participating in the prosecutor's actions. Indeed, as in *Myrick,* defendants did nothing more than report accurate factual information to the prosecutor.

*Johnson v. DeBiaso*, 2009 WL 1065994, at *5–6 (N.J. Super. 2009) (discussing *Myrick v. Resorts Int'l Casino & Hotel*, 726 A.2d 262, 264 (N.J. Super. App. Div. 1999)).

The *Johnson* case explained that it wasn't enough for a plaintiff to show that the defendant had provided information to the prosecutor's office, where the prosecutor's office conducted an independent investigation:

> *In short, there must be encouragement, participation in, and perhaps even [] pressure asserted on the charging authorities. There has to be something more than merely reporting the activity when there is an independent agency involved, and that's the holding in Myrick.*

*Johnson*, 2009 WL 1065994, at *4 (emphasis in the original, quoting the trial judge). The question that the Plaintiff has not explicitly addressed is what the "something

7

more"—the "encouragement, participation in, and perhaps even [] pressure asserted on the charging authorities"—consists of, in this case. *Id.* Based on Mr. Smart's motion for reconsideration, I understand his answer to be that the "defendants concealed the receipts from PP&D and the prosecutor's office and then lied about the concealment of the receipts in their deposition in the case at bar." Doc. No. 118, at 16. I suspect that the Plaintiff would distinguish *Johnson* by asserting that the Union Officials did not report "accurate factual information" to the prosecutor. *Johnson*, 2009 WL 1065994 at *6. That seems to be the crux of his argument.

      The Plaintiff does not cite caselaw holding that concealing or failing to turn over documents to the prosecutor could be the "something more" required under *Johnson*. My research has turned up cases that hold that the concealment of material information from a prosecutor may suffice to implicate a witness in the institution of a malicious criminal prosecution. *See Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) ("officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions") (citations and internal quotations omitted); *Gould v. JPMorgan Chase Bank, N.A.*, 2021 WL 4272858, at *2–3 (D.N.J. 2021) (the plaintiff contended that the bank told the prosecutor that it had been unable to contact the account holder to check whether the plaintiff was engaging in unauthorized transactions, but that this was false); *Brazil v. Scranton School Board*, 2023 WL 5916470, at *11–12 (M.D. Pa. 2023) (deliberate concealment or failure to disclose exculpatory information); *Ankele v. Hambrick*, 2003 WL 21396862, at *1 (E.D. Pa. 2003) (citing *Sanders v. English,* 950 F.2d 1152, 1163 (5th Cir. 1992), *abrogated on other grounds by Albright v. Oliver*, 510

U.S. 266 (1994) ("Deliberately concealing or deliberately failing to disclose exculpatory evidence" is a basis for a malicious prosecution claim); *Vassallo v. Timoney,* No. 00-84, 2001 WL 1243517, at *7 n. 8 (E.D. Pa. Oct. 15, 2001) (knowing or reckless concealment of exculpatory evidence) *aff'd,* 40 Fed. Appx. 734 (3d Cir. 2002) (Table); *Cannon v. Montgomery Cnty.,* No. Civ.A.96-CV-7405, 1998 WL 354999, at *5 (E.D. Pa. June 29, 1998) (concealment of exculpatory evidence), *aff'd,* 202 F.3d 253 (3d Cir.1999) (Table)). While the cases typically involve allegations that investigating police officers concealed material exculpatory information, I am convinced that in this case, which involves law enforcement officers acting in their capacity as Union Officials, the same logic would apply under New Jersey law.

Having satisfied myself that the Plaintiff's legal theory is tenable, at least at a general level, I am skeptical about Plaintiff's proofs. *See Wiltz v. Middlesex Cnty. Off. of Prosecutor*, 249 Fed.Appx. 944, 950, (3d Cir. 2007) (plaintiff's proof of deceit by a witness was insufficient to demonstrate "affirmatively . . . [that the witness was the] [p]roximate and efficient cause of maliciously putting the law in motion.") (quoting *Seidel v. Greenberg*, 260 A.2d 863, 869 (Law Div. 1969) (citation omitted).

Mr. Smart's proof of concealment of exculpatory documents is thin, as it relies on supposed testimonial inconsistencies by the Union Officials. Doc. No. 118 at 4–6. Nor does the Plaintiff explain the origin of the host of documents that the prosecutor returned to the Union at the end of the criminal case. Doc. Nos. 126-1, at 17; 128 at 31–34; 131. At the conclusion of a case, a prosecutor typically will either destroy the evidence or turn the evidence over to the person or entity from whom the evidence was

9

received. Thus, there is a strong inference that the prosecutors got their documents, including some receipts, from the Union.[3]

It is unclear how Mr. Smart will prove that the missing receipts he complains of were exculpatory, in a meaningful sense. Reading the trial transcript, it seems that the prosecutor's theory was that Smart's cash withdrawals and expenditures were not tied to legitimate Union purposes. Doc. No. 130-2 at 24–27. Mr. Schmidheiser turned over the PP&D audit report to the prosecutor's office.[4] He and Mr. McLaughlin told the prosecutor, during their interviews, that they could not identify a Union purpose for various expenditures and cash withdrawals disclosed by the documents. This appears to be due in large measure to the failure of Mr. Smart, or Mr. Ford during Smart's tenure as Treasurer, to get and keep accurate and contemporaneous vouchers and ledgers linking receipts, cash withdrawals, and other evidence of expenditures to a legitimate Union purpose. There is nothing inherently magical about more receipts from ShopRite or Staples that would ineluctably tie the questioned expenses to a legitimate Union purpose. *See, e.g.*, Doc. No. 131-30; 131-43, 3.

Despite my misgivings, I conclude that Count VI should go to trial. The fundamental dispute is a credibility issue over whether the Union Officials turned over to the prosecutor the complete set of Ford documents, including receipts. At this remove

---

[3] I directed the Union officials, through their attorney, to file copies of the documents received from the prosecutor as part of the record in this case, to preserve the evidence for review and to permit me to go through them as part of the consideration of plaintiff's motion. Doc. No. 131. I reviewed the documents at length.

[4] The Union officials supplied the PP&D independent audit, authored by Mr. Petrucelli, to the prosecutor's office at the outset of the investigation. Mr. Petrucelli's report concluded that there was evidence that Mr. Smart had failed to perform his duties as a Treasurer under the Union's by-laws. Doc. No. 79-4, at 97. Mr. Petrucelli made no determination that there was criminal wrongdoing by Mr. Smart in his report but commented in painful detail about the lack of reconciliation of cash withdrawals and other expenditures. Doc. 79-1 at 89–102. Mr. Petrucelli attached a list of documents reviewed; no receipts were mentioned. *Id.* at 98–99.

from the trial evidence, I cannot say that a reasonable jury could not conclude that the Union Officials deliberately concealed evidence which would have convinced the prosecutor that probable cause was absent. Mr. Schmidheiser's testimony at trial creates substantial doubt about the importance and disposition of the receipts, sufficient to warrant having a jury make the decision in this case. Doc. No. 130-2 at 24–27. Under these circumstances, I exercise the caution recommended in *Halsey v. Pfeiffer*, 750 F.3d at 300 (reversing a grant of summary judgment and explaining that "[c]ourts should exercise caution before granting a defendant summary judgment in a malicious prosecution case when there is a question of whether there was probable cause for the initiation of the criminal proceeding"). There is a legitimate question whether there was probable cause for the initiation of the criminal proceeding against Mr. Smart. He was accused of theft, not criminally bad bookkeeping, and a reasonable jury may find an absence of probable cause that should have been obvious to the GCPO a long time before a criminal trial. A jury will decide the probable cause issue, and whether the GCPO's pursuit of the charges was proximately caused by the Union Officials' deliberate concealment of exculpatory information.

  A trial is scheduled to start May 6, 2024, and it will proceed against the two Union Officials on Count VI.

## CONCLUSION

For these reasons, I will grant the Plaintiff's Motion, vacate that portion of my previous order granting summary judgment as to Count VI, and enter an order denying summary judgment as to Count VI and directing a trial on Count VI.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**